UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
DELIO ALOISIO MATTOS SANTOS FILHO,   |
                                     |           10 Civ. 7508 (JFK)(KNF)
            Plaintiff,               |
                                     |
      - against -                    |
                                     |
SAFRA NATIONAL BANK OF NEW YORK,     |
                                     |
            Defendant.               |
-------------------------------------------------------------x

## PLAINTIFF'S PRE-TRIAL BRIEF

NESENOFF & MILTENBERG, LLP
Of Counsel: Philip A. Byler, Esq./Andrew T. Miltenberg, Esq.
Attorneys for Plaintiff Delio Alosisio Mattos Santos Filho
363 Seventh Avenue - Fifth Floor
New York, New York 10001
212.736.4500

**TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ............................................................................................ iii

PRELIMINARY STATEMENT ......................................................................................1

THE FACTS ..................................................................................................................1

I.   The Parties ...........................................................................................................1

II.  Plaintiff Delio's Summary Financial History ........................................................2

III. The Opening Of The Account At The Defendant Bank
     With Defendant Bank Officer Naslausky .............................................................2

IV.  The Account Under Defendant Bank Officer Nasluasky .......................................5

V.   The Account Under Defendant Bank Officer Ferreira ...........................................5

     A.   Ferreira's Communications With Plaintiff Delio
          In Late 2006 and Early 2007 .....................................................................5

     B.   The Structured Note Transactions ..............................................................8

     C.   Ferreira's October 2008 Statements To Plaintiff
          Delio About The Structured Note Transactions .......................................12

     D.   Plaintiff Delio's Receipt of Stock..............................................................13

VI.  The Account Under Defendant Bank Officer Amorim.........................................13

VII. Damages ............................................................................................................15

ARGUMENT ..............................................................................................................16

I.   THE COURT SHOULD ENTER JUDGMENT IN FAVOR OF
     PLAINTIFF DELIO ON HIS CLAIM FOR BREACH OF CONTRACT...........................16

     A.   The Elements Of Breach Of Contract Are Satisfied .................................16

          1.   Existence Of A Contract .................................................................16

          2.   Performance By The Party Seeking Recovery..................................17

**-i-**

3.      Non-Performance By The Other Party............................................................17

4.      Damages Attributable To The Breach Of Contract.......................................18

B.      Defendant Bank's Attempt To Invoke Fine Print Contractual
Language To Absolve Itself Of Liability Is Unavailing ...........................................19

II.     THE COURT SHOULD ENTER JUDGMENT IN FAVOR OF PLAINTIFF
DELIO ON HIS CLAIM FOR BREACH OF FIDUCIARY DUTY..................................21

A.      Under The Law and Given The Facts of This Case, The
Defendant Bank Owed A Fiduciary Duty To Plaintiff Delio ..................................21

B.      The Defendant Bank Breached Its Fiduciary Duty To Plaintiff Delio ...................23

C.      Damages Attributable To The Breach Of Fiduciary Duty .....................................23

III.    THE COURT SHOULD ENTER JUDGMENT IN FAVOR OF PLAINTIFF DELIO
ON HIS CLAIM FOR VIOLATION OF SECTION 10(b) OF THE SECURITIES
EXCHANGE ACT OF 1934 AND RULE 10b-5 PROMULGATED THEREUNDER.......24

A.      The Preponderance Of The Evidence Will
Establish The Elements Of The 10b-5 Action ..........................................................24

B.      The Preponderance Of The Evidence Will
Establish The Scienter Element Of The 10b-5 Action .............................................26

C.      Damages Attributable To The 10b-5 Violation .......................................................27

IV.     THE COURT SHOULD ENTER JUDGMENT IN FAVOR OF
PLAINTIFF DELIO ON HIS CLAIM FOR COMMON LAW FRAUD.............................28

CONCLUSION ..........................................................................................................................29

## TABLE OF AUTHORITIES

**Page**

**Cases**

*Acito v. IMCERA Group, Inc.*, 47 F.3d 47 (2d Cir. 1995) ...............................................27

*ADT Operations, Inc. v. Chase Manhattan Bank, N.A.*, 173 Misc.2d 959,
    662 N.Y.S.2d 190 (Sup.Ct. N.Y. Co. 1997) ........................................................21

*Banque Arabe Et Internationale D'Investissement v. Maryland National*,
    57 F.3d 146 (2d Cir. 1995) ...............................................................................28

*Beautiful Jewellers Private Ltd. v. Tiffany & Co.*, 438 F. App'x 20 (2d Cir. 2011) .....................16

*Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723 (1975).........................................25

*Broemmer v. Abortion Servs. of Phoenix, Ltd.*, 173 Ariz. 148,
    840 P.2d 1013 (Ariz. S.Ct.  1992)......................................................................20

*Brennan v. Bally Total Fitness*, 153 F.Supp.2d 408 (S.D.N.Y. 2001) ...........................................21

*Chill v. General Electric Company*, 101 F.3d 263 (2d Cir. 1996) ...........................................26-27

*Darner Motor Sales, Inc. v. Universal Underwriters Ins. Co.*, 140 Ariz. 383,
    682 P.2d 388 (Ariz. S.Ct. 1984) .......................................................................20

*Delshah Group LLC v. Atit Javeri, et al.*, 2013 WL 2322488 (S.D.N.Y. May 28, 2013) ...............25

*Desiderio v. National Ass'n of Sec. Dealers*, 191 F.3d 19 (2d Cir. 1999),
    *cert. denied*, 531 U.S. 1069 (2001) ...................................................................21

*Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336 (2005) .......................................25

*ECA & Local 134 IBEW Joint Pension Trust of Chicago v. JP Morgan Chase Co.*,
    553 F.3d 187 (2d Cir. 2009) ..............................................................................27

*Ernst & Ernst v. Hochfelder*, 425 U.S. 185 (1976) .......................................................26

*First Invs. Corp. v. Liberty Mut. Ins. Co.*, 152 F.3d 162 (2d Cir.1998) .......................................16

*Follman v. World Financial Network National Bank*, 721 F.Supp.2d 158 (E.D.N.Y. 2010) .........20

*Frydman & Company, et al. v. Credit Suisse First Boston Corp.*, 272 A.D.2d 236,
    708 N.Y.S.2d 77 (1st Dep't 2000) ......................................................................22

_Gaidon v. Guardian Life Insurance_, 94 N.Y.2d 330, 725 N.E.2d 598,
    704 N.Y.S.2d 177 (1999) ..................................................................................28

_Graham v. Scissor-Tail, Inc._, 28 Cal.3d 807, 171 Cal. Rptr. 604, 623 P.2d 165 (1981).................20

_Herman & MacLean v. Huddleston_,, 459 U.S. 375 (1983) .............................................................24

_In re Flag Telecomn Holdings, Ltd. Securities Litigation_, 574 F.3d 29, 35-36 (2d Cir. 2009) ......25

_Levine v. Seilon_, 439 F.2d 328 (2d Cir. 1971) ..............................................................................27-28

_Manufacturers Hanover Trust Co. v. Yanakas_, 7 F.3d 310, 318 (2d Cir. 1993) .............................21

_Marks v. New York University_, 61 F.Supp.2d 81, 88 (S.D.N.Y.1999) ............................................16

_Matrixx Initiatives Inc. v. Siracusano_, __ U.S. __, 131 S.Ct. 1309 (2011) ...............................25-26

_Ottmann v. Hanger Orthopedic Group_, 353 F.3d 338 (4th Cir. 2003) ............................................26

_P. Chimento, Inc. v. Banco Popular de Puerto Rico_, 208 A.D.2d 385,
    617 N.Y.S.2d 1757 (1st Dep't 1994).............................................................................21-22

_RCN Telecom Servs., Inc. v. 202 Ctr. St. Realty LLC._, 156 F. App'x 349 (2d Cir. 2005) ...............16

_Rolf v. Blyth, Eastman Dillon & Co._, 570 F.2d 38, 46 (2d Cir. 1978) ............................................26

_Rush v. Oppenheimer & Co._, 638 F.Supp. 872 (S.D.N.Y. 1996) ....................................................21

_San Leandro Emergency Med. Group Profit Sharing Plan v. Philip Morris Cos._,
    75 F.3d 801 (2d Cir. 1996) ..........................................................................................27

_Scott v. Dime Savings Bank of New York_, 886 F.Supp. 1073 (S.D.N.Y. 1995) .............................22

_Sears Roebuck and Co. v. Avery_, 593 S.E.2d 424 (N.C. Ct. App. 2004) .......................................20

_Shields v. Citytrust Bancorp, Inc._, 25 F.3d 1124 (2d Cir. 1994) ....................................................27

_South Cherry St., LLC v. Hennessee Group LLC_, 573 F.3d 98 (2d Cir. 2009) ..............................27

_Stoneridge Investment Partners, LLC v. Scientific-Atlanta, Inc._, 552 U.S. 148 (2008) ..............25

_Suez Equity Investors, LP v. Toronto-Dominion Bank_, 250 F.3d 87 (2d Cir. 2001) ......................25

*Tellabs, Inc. v. Makor Issues & Rights Ltd.*, 551 U.S. 308 (2007) ...............................................26

*Weiner v. Lazard Freres & Co.*, 241 A.D.2d 114, 672 N.Y.S.2d 8 (1st Dep't 1998)........................22

*Zeller v. Bogue Elec. Mfg. Corp.*, 476 F.2d 795, 801-802 (2d Cir.),
    *cert. denied*, 414 U.S. 908 (1973) ......................................................................................28

## Statutes & Rules

Securities Exchange Act of 1934, § 10(b), 15 U.S.C. § 78j(b) ............................................1, 24-29

Securities Exchange Act of 1934, § 28(a) of the Securities Exchange Act, 15 U.S.C. § 78bb(a) ...28

Securities Exchange Commission Rule 10b-5 ...................................................................1, 24-29

## Other Authorities

E.A. Farnsworth, *Contracts*, § 12.1, p. 730, 732 (4th ed. 2004)......................................................18-19

Second Restatement of Contracts § 211 and comments ...............................................................20

Second Restatement of Contracts § 344 .....................................................................................18

8 Samuel Williston, *A Treatise on the Law of Contracts* § 18.9, at 54 (4th ed. 1998) ...................21

## PRELIMINARY STATEMENT

Plaintiff Delio Alosio Mattos Santos Filho ("Plaintiff Delio") respectfully submits this Pre-Trial Brief to summarize what the preponderance of the evidence in the trial record will show are the facts and to discuss why Judgment should be entered by the Court after trial for Plaintiff Delio on his claims for breach of contract, breach of fiduciary duty, violation of Rule 10b-5 under § 10(b) of the Securities Exchange Act of 1934, and common law fraud.

Paragraph 1 of the Complaint states "The Nature of the Action" in a way worth quoting here:

> This action is brought to obtain redress for Plaintiff Delio Aloisio Mattos Santos Filho ("Plaintiff Delio"), who has been victimized and financially damaged by a course of deceptive and dishonest conduct by Defendant Safra National Bank of New York ("Defendant Safra Bank"), which misused Plaintiff Delio's account monies for the purchase of very high risk instruments relating to companies in emerging markets that were wholly inappropriate for an unsophisticated investor such as Plaintiff Delio and that was done without disclosure to and often without the knowledge of Plaintiff Delio. Those account monies were by agreement, very differently, only to be put into conservative investments, such as Time Deposits, when and upon Plaintiff Delio's instructions, so as to preserve the monies for eventual use in real estate in Brazil. Plaintiff Delio therefore brings causes of action for breach of contract, breach of fiduciary duty, . . . violation of Rule 10b-5 under § 10(b) of the Securities Exchange Act of 1934 . . . and common law fraud.

(Complaint ¶ 1.)

## THE FACTS

The following statement of facts are based on the stipulated facts in the Pre-Trial Order, the documents that are expected to go into evidence and the expected testimony of Plaintiff Delio.

### I.    The Parties.

Plaintiff Delio Alosio Mattos Santos Filho ("Plaintiff Delio") Plaintiff Delio Alosio Mattos Santos Filho ("Plaintiff Delio") is a Brazilian citizen residing in residing at Travessa do Paço No. 23 – 904, Rio de Janeiro – RJ 20010-170, Brazil.  In 1978, Plaintiff Delio graduated from law school

in Rio de Janeiro.  Plaintiff Delio has practiced civil law ever since.  (Stip. Fact 1.)

Defendant Safra National Bank of New York ("Defendant Bank"is a privately-owned nationally chartered bank with its principal place of business located at 546 Fifth Avenue, New York, New York.  (Stp. Fact 2.)

## II.    Plaintiff Delio's Summary Financial History.

Plaintiff Delio in 1989 had one experience with a security, which was a mutual fund, and after an economic change, Delio lost everything he put in that mutual fund.  In the years 1989 to 2002, Delio had no experience in common stock, preferred stock, corporate bonds, municipal bonds, options or derivatives.  In the years 1999 to 2009, Plaintiff Delio received only professional fees; he had no rental income; he had no annual income exceeding $100,000; he did not have assets exceeding $100,000; and he maintained only one bank account, which was the one at Defendant Bank.  (Delio Testimony.)

## III.    The Opening Of The Account At The Defendant
Bank With Defendant Bank Officer Naslausky.

On July 2002, Plaintiff Delio had a meeting with a Defendant Bank officer, one Mr. Carlos Eduardo Naslausky ("Naslausky"), at the office of Plaintiff Delio's father in Rio de Janeiro, Brazil. At that meeting, Portuguese was the language spoken.  Plaintiff Delio agreed to open an account at Defendant Bank, and into that account, Delio intended to put the legal fees earned from a matter in Portugal.  Plaintiff Delio identified himself as a conservative investor wanting no risk because the money put into the Defendant Bank was meant to purchase a real estate property in Brazil for his family, and further, Plaintiff Delio needed to have the money available to him upon demand so that he could complete the contemplated real estate transaction when it became available.  Mr. Naslausky

reassured Plaintiff Filho stating that he (Mr. Naslausky) would take care of Plaintiff Filho.  Delio signed in blank account terms pages at the meeting.  (Stip Fact 3; Delio Testimony; JX 1.)

The account terms pages, which were in English, was marked at the deposition of Plaintiff Delio as part of D-1, Bates stamp SNB-SF 00001 through SNB-SF 00008, and is marked for trial and receipt in evidence as part of JX 1 (Bates stamp SNB-SF 00001 through SNB-SF 00018. SNB-SF 00021 and SNB-SF 00023-29).  Plaintiff Delio signed JX 1 on page 7 but did not do any of the entries on JX 1.   (Stip. Fact 5; JX 1; Delio Testimony.)

Page 2 of JX 1 shows that the mailing address is "Hold Mail" and that a telephone number and a cell number are provided as contact information to Plaintiff Delio.  Plaintiff Delio did not verbally request "Hold Mail" and did not receive account documents until he requested them.  (JX 1; Delio Testimony.)

Page 5 of JX 1 shows that the referral to Plaintiff Delio as a customer is by Naslausky, that Plaintiff Delio does not have a relationship with another bank or depository institution, that the source of the monies for the account is "professional earnings" and that the opening deposit was of 160,000 Euros.  Page 5 of JX 1 also shows that in the next 12 months, more funds would be deposited, and Plaintiff Delio would conduct through the account: $3,000 in the demand deposit account; $100,000 in a time deposit account; and $200,000 in investments.  Plaintiff Delio, however, did not intend to deposit any more funds even though the form indicates otherwise.  (JX 1; Delio Testimony.)

Page 6 of JX 1 shows authorized investment in general accounts, mutual funds, money market, U.S. equities and time deposits.  Emerging market debt and derivative instruments are not authorized. Also on page 6 of JX 1, the special services of "Hold Mail," "Designated Name

Account" and "Custody Account" are checked as applicable.  (JX 1.)

Page 7 of JX 1 also shows the special services of "Hold Mail," "Designated Name Account" and "Custody Account" are checked as applicable and contains the signature of Plaintiff Delio as acknowledging to agreeing to the "International Banking Terms and Conditions."  (JX 1.)

Page 8 of JX 1 shows the signature of Naslausky attesting that he met with Plaintiff Delio on July 1, 2002 to open the account and the signature of other Defendant Bank officers approving the opening of the account. (JX 1.)

An account terms page opening a checking account shows the signature of Plaintiff Delio and his account name as Riding.  (JX 1, SNB-SF 00021.)

The "International Banking Terms and Conditions," which is in English and small print, was marked at the deposition of Plaintiff Delio as part of D-1, Bates stamp SNB-SF 00009 through SNB-SF 00018, and is marked for trial and receipt in evidence as part of JX 1.  The Defendant Bank's "International Banking Terms and Conditions" was not shown to and was not given to Plaintiff Delio at the July 1 meeting.  provided, among other things, that "all financial instruments and securities purchased by the Bank for your Investment Account will be selected by you, without recommendation or advice by the Bank."  (JX 1.)

An investment agreement, which was and is in English and small print, was marked at the deposition of Plaintiff Delio as part of D-1, Bates stamp SNB-SF 00023 through SNB-SF 00029, and is marked for trial and receipt in evidence as part of PX 1 (Bates stamp SNB-SF 00001 through SNB-SF 00018, SNB-SF 00021 and SNB-SF 00023-29).

 The account opening documents were approved by the Defendant Bank's Compliance Department a few weeks later on August 1, 2002, at which time Plaintiff Filho formally became a

client of the Defendant Bank, which opened an account for Plaintiff Filho under the designated name "Riding." (Stip Fact 3; JX 1; JX 2.)

The monthly account statements for Plaintiff Delio's account at Defendant Bank from June 2003 through June 2010, are collected and marked for trial and receipt in evidence as JX 3. (Stip. Fact 9; JX 3.)

### IV.   The Account Under Defendant Bank Officer Naslausky.

Plaintiff Delio's written authorization to convert the 160,000 Euros into U.S. dollars, which was in Portugese, was marked at the deposition of Plaintiff Delio as D-2, Bates stamp SNB-SF 00031, and is marked for trial and receipt in evidence as JX 2. The written authorization was directed to Naslausky and was dated December 4, 2002. The written authorization has hand written on it "Riding." After this conversion of 160,000 Euros into U.S. dollars was effected, Naslausky put the account monies into a jumbo CD that paid 0.6% and matured in September 2006. (JX 2; Delio's Testimony; Stip. Fact 7.)

In late 2002, Plaintiff Delio called Naslausky and asked him about Plaintiff Delio's account. When Naslausky explained the account balance that reflected a deduction for costs, Plaintiff Delio asked if the fee would continue to be charged, to which Naslausky said it would. Naslausky said he would try to get better results through safe investments. (Delio Testimony.)

### V.   The Account Under Defendant Bank Officer Ferreira.

#### A.   Ferreira's Communications With Plaintiff Delio In Late 2006 and Early 2007.

In late 2006, Plaintiff Delio called Defendant Bank because he had not been in contact for a period of time and he wanted to find out if everything was OK. Plaintiff Delio learned that Naslausky was no longer at the Bank and that Plaintiff Delio's new account officer was Ms. Carmela

Ferreira ("Ferreira").  The call was passed on to Ferreira, who said that the money in Plaintiff Delio's account was just sitting there and that she (Ferreira) was going to take charge of the situation. Plaintiff Delio told her that it was unfortunate and that he was not happy with Defendant Bank's performance.  Plaintiff Delio was not, however, looking for more of a return on his money; Plaintiff Delio did not want to incur more losses.  Plaintiff Delio did not say much in the call with Ferreira, only that he reiterated that he was a person with a conservative profile and he did not want to put his money at risk even more.  According to Plaintiff Delio, Ferreira said she guaranteed that it would be zero risk.  (Delio Testimony.)

A collection of e-mails that Ferreira sent to Plaintiff Delio in Portugese regarding Plaintiff Delio's account at Defendant Bank and the translation of those e-mails into English was marked at the deposition of Plaintiff Delio as D-4, Bates stamp SNB-SF 000598 to SNB-SF 00614, and is marked for trial and receipt in evidence as JX 4.  (Stip. Fact 11; JX 4.)  Another collection of e-mails between Defendant bank and Plaintiff Delio regarding Plaintiff Delio's account at Defendant Bank, in its Portugese original and English translation, is marked for trial and receipt in evidence as JX 5 (00062P to 00126P).  (Stip. Fact 12; JX 5.)

In an email dated December 13, 2006, Ferreira outlined some possibilities for investing funds in Plaintiff Delio's account, which had not been invested in any securities since the jumbo CD had matured in September 2006.  In JX 5, this email in the original Portuguese appears at Bates stamp 00091P-00092P and in the English translation appears at 00124P.  In the email, Ferreira identified to Plaintiff Delio two fixed income securities: one issued by National Steel S.A. and one by General Electric; and Ferreira also raised the possibility of investing in Structured Notes paying variable income.  In an email dated the same day, plaintiff thanked Ms. Ferreira for sending the information

on the investments and stated that he would examine it carefully.  He also expressed hope that measures were being taken in order to credit his account for fees that had been incurred while monies sat unattended in a checking account.  In PX 5, this email in the original Portuguese appears at Bates stamp 00090P and in the English translation appears at 00123P.  No investments were made in response to Ferreira's email dated December 13, 2006.  (JX 5; Delio Testimony.)

On January 11, 2007, Ferreira sent to Plaintiff Delio two e-mails contained in PX 4.  The e-mails in the original Portuguese appear on Bates stamp SNB-SF 00598 to SNB-SF 00600 and in English on Bates stamp SNB-SF 00606 to SNB-SF 00608.  The first e-mail noted that the only investment that Plaintiff Delio's account since 2002 had been CDs and that she (Ferreira) had been looking into some products for a better return. The e-mail continued by offering some options: one was a note from National Steel S.A. (Vicunla Group) with perpetual maturity; the other was commercial paper that at the end of 90 days either would pay out principal plus interest or would pay shares in Gerdau, Vale de Rio Doce or Banco Bradesco.  Ferreira's second email stated that Ferreira had obtained approval for a credit for the time that Plaintiff Delio's funds had been sitting in the account, which totaled $300, and that the second investment option, the one involving buying commercial paper, was not then available.  Ferreira's second email dated January 11, 2007, also asked that Plaintiff Delio sign a new W8 form, which Plaintiff Delio did.  (JX 5; Delio Testimony.)

No investments were made in response to Ferreira's email dated January 11, 2007. The January 2007 statement for Plaintiff Delio's account in JX 3, Bates stamp SNB-SF 00183 to SNB-SF 00185, shows no transactions. Plaintiff Delio could not review the investments identified in Fereira's email dated January 11, 2007, as he did not know anything about them and could not evaluate the different investment scenarios presented by Ferreira.  Plaintiff Delio did not take into consideration

-7-

what was in these e-mails about the securities because he was dealing with a Defendant Bank representative who had pledged he would have no risk whatsoever. Plaintiff Delio did not want to own shares and did not think he owned shares; instead, he intended to buy real estate; if he understood his account monies were in shares, Plaintiff Delio would have sold the shares. So far as Plaintiff Delio was concerned, this was Defendant Bank's responsibility. When Ferreira guaranteed there was no risk whatsoever, Plaintiff Delio took her at her word. (Delio Testimony; JX 3.)

**B.       The Structured Note Transactions.**

The February 2007 statement for Plaintiff Delio's account in JX 3, Bates stamp SNB-SF 00186 to SBB-SF 00190, shows a transaction for American Express for $134,560.50. Plaintiff Delio did not authorize the transaction. (JX 3; Delio Testimony; Stip. Fact 13.)

On March 7, 2007, Ferreira sent e-mail to Plaintiff Delio stating that "[t]oday, March 7, the Commercial Paper investment we made for you is maturing." The e-mails are contained in JX 4; the Portugese appears on Bates stamp SNB-SF 00600 to SNB-SF 00602 and the English appears on Bates stamp SNB-SF 00608 to SNB-SF 00610. The commercial paper investment was in American Express, which has made a profit in less than 30 days. Plaintiff Delio did not object to the transaction at the time because Plaintiff Delio put trust in Ferreira, Ferreira had guaranteed to Plaintiff Delio there was no risk he has no risk, and Plaintiff Delio saw he made money on this transaction. (JX 4; Delio Testimony.)

Ferreira's March 7, 2007 e-mail in JX 4 further discussed a Structured Note involving a share of Vale de Rio Doce with two scenarios depending upon whether the share will be devalued more than 20% compared ot the share price on the first investment date. If the share did not devalue more than 20%, Plaintiff Delio would get the principal plus the interest; if the share did devalue more than

20%, Plaintiff Delio would receive shares of Vale de Rio Doce for the principal and interest in cash. Plaintiff Delio did not, however, pay much attention to the e-mail because Plaintiff Delio did not believe he was incurring any risk.  According to Plaintiff Delio, Ferreira did not write that principal was guaranteed, but she had verbally said so to Plaintiff Delio.  (JX 4; Delio Testimony.)

The March 2007 statement for Plaintiff Delio's account in JX 3, Bates stamp SNB-SF 00191 to SBB-SF 00196, shows two transactions, one for $100,000 in a Structured Note issued by Lehman Brothers at 12% based on Vale de Rio Doce and one for $50,000 in a Structured Note issued by Lehman Brothers at 16% based on GGB/SID/UBB (Gerdau, Cia Siderurgica National and Unibanco).  Plaintiff Delio does not recall having communications concerning the March 2007 transactions; it was to his mind a relationship based on trust.  (JX 3; Delio Testimony.)

As reflected in the collections of emails contained in JX 4 and JX 5, from May 2007 through October 2008, Plaintiff Delio did not communicate with Defendant Bank.  (Plaintiff Delio Testimony; JX 4; JX 5.)

The June 2007 statement for Plaintiff Delio's account in JX 3, Bates stamp SNB-SF 00204 to SNB-SF 00206, shows that the Vale de Rio Doce Structured Note paid the principal plus $3,000 in interest and the GGB/SID/UBB (Gerdau, Cia Siderurgica National and Unibanco) Structured Note paid the principal plus $2,000 in interest on that GGB/SID/UBB (Gerdau, Cia Siderurgica National and Unibanco) Structured Note.  (JX 3.)

The July 2007 statement for Plaintiff Delio's account in JX 3, Bates stamp SNB-SF 00207 to SNB-SF 00211, shows a purchase on July 26, 2007 of a Rio/SID/ABV Structured Note at 19%. (JX 3.)

The October 2007 statement for Plaintiff Delio's account in JX 3, Bates stamp SNB-SF

00220 to SNB-SF 00224, shows the Rio/SID/ABV Structured Note maturing and paying the principal plus $6,745 in interest.  There is also shown another purchase on October 26, 2007 of another Rio/SID/ABV Structured Note at 19% for $145,000.  (JX 3.)

The January 2008 statement for Plaintiff Delio's account in JX 3, Bates stamp SNB-SF 00233 to SNB-SF 0027, shows the Rio/SID/ABV Structured Note bought in October 2007 maturing and paying the principal plus $6,887.50 in interest.  There is also shown another purchase of another Rio/SID/ABV Structured Note at 22.08% for $50,000.  (JX 3.)

The March 2008 statement for Plaintiff Delio's account in JX 3, Bates stamp SNB-SF 00242 to SNB-SF 00246, shows a purchase of a BBD/UBB/ITU structured note at 24% for $50,000.  (JX 3.)

The April 2008 statement for Plaintiff Delio's account in PX 4, Bates stamp SNB-SF 00247 to SNB-SF 00251, shows the Rio/SID/ABV structured note bought in January 2008 maturing and paying the principal plus $2,760 in interest.  There is also shown two purchases, one on April 28, 2008 for a RIO/PBR/ITU structured note at 15.5% for $55,000 and one on April 30, 2008 for a POT/MOS structured note at 28.15% for $50,000.  (JX 3.)

The June 2008 statement for Plaintiff Delio's account in JX 3, Bates stamp SNB-SF 00256 to SNB-SF 00260, shows the account balance at $175,957.56   (SNB-SF 00256) and the BBD/UBB/ITU structured note bought in March 2008 maturing and paying the principal plus $3,000 in interest (SNB-SF 00257). There is also shown a purchase for $50,000 in a Rio 13.01% structured note.  (JX 3.)

The July 2008 statement for Plaintiff Delio's account in JX 3, Bates stamp SNB-SF 00261 to SNB-SF 00265, shows the RIO/PBR/ITU structured note purchased in April 2008 for $55,000

-10-

maturing and paying the principal plus $2,131.25 in interest and the POT/MOS structured note purchased in April 2008 for $50,000 maturing and paying the principal plus $3,519 in interest (SNB-SF 00262).  There is also shown a purchase for $60,000 in a RIG/APA/AGU structured note. (JX 3.)

　　　　The August 2008 statement for Plaintiff Delio's account in PX 4, Bates stamp SNB-SF 00266 to SNB-SF 00270, shows a purchase on August 4, 2008 of a POT/MOS/MON structured note for $55,000 and, on August 8, 2008, another POT/MOS/MON structured note for $60,000 (SNB-SF 00267).  (JX 3.)

　　　　The September 2008 statement for Plaintiff Delio's account in PX 4, Bates stamp SNB-SF 00271 to SNB-SF 00276, shows the Rio 13.01% structured note maturing and paying the principal plus interest of $1,645 and shares worth $1,350  (SNB-SF 00272).  (JX 3.)

　　　　From March 2007 through August 2008, then, 12 Structured Notes were purchased with monies in Plaintiff Delio's account.  A chart in the Stipulation of Facts No. 14 summarizes the purchase, sell and gain/loss information as to these Structured Notes according to the monthly statements for Plaintiff Delio's account collected in JX 3.  These transactions were: not specifically authorized by Plaintff Delio in writing; originated in fact by Defendant Bank Ferreira without a disclosure of risks and not as an accommodation for Plaintiff Delio; not accompanied with the provision of a written prospectus; and wholly unsuitable for Plaintiff Delio, who was not an accredited investor under S.E.C. Rules.  The losses add up to $45,718.  (Stip. Fact 14; Delio Testimony; Geelan Testimony.)

**C.      Ferreira's October 2008 Statements To Plaintiff Delio**
         **About The Structured Note Transactions.**

On October 2, 2008, Defendant Bank officer Ferreira sent an email to Plaintiff Delio asking

if he received the email, to confirm he had.  This email in the original Portuguese is contained in JX

5 at Bates stamp 00075P to 00076P and in the English translation at Bates stamp 00109P to 00110P.

That same day, Plaintiff Delio replied that he thanked Ferreira for her message and was waiting for

Ferreira's information.  This e-mail in the original Portuguese is contained in JX 5 at Bates stamp

00076P and in the English translation at Bates stamp 00109P.  After that one e-mail, from October

2008 to July 2009, Plaintiff Delio did not communicate with Defendant Bank.    (JX 5; Delio

Testimony.)

On October 6, 2008, SNB officer Ferreira sent an e-mail to Plaintiff Delio providing

"consolidated information."  The e-mail is contained in JX 4: the Portuguese original appears on

Bates stamp SNB-SF 00602 to SNB-SF 00604 and the English appears on Bates stamp SNB-SF

00611 to SNB-SF 00612.   The e-mail is contained in PX 5: the Portuguese appears on Bates stamp

00075P to 00076P and the English appears on Bates stamp 00108P to 00109P.   Ferreira wrote that

Plaintiff Delio and Ferriera "began the relationship on September 26, 2006, when [Plaintiff Delio]

had $149,276.81."  Ferreira went on to state that "[s]ince that time, the investment has been done in

Structured Notes" and described the three Structured Notes in which Plaintiff Delio was then

invested: (1) $60,000 in Potash/Mosaic/Monsanto (fertilizer companies) with a maturity date of

February 4, 2009; (2) $60,000 in Agrium (fertilizer company)/Apache (natural gas)/Transocean (deep

water oil drilling) with a maturity of July 29, 2009; and (3) $50,000 in Vale do Rio Doce, described

as "[o]ne of the largest companies with strong valuation trend in 2009."  Ferreira added that "all

-12-

companies that comprise your Portfolio, without exception, are solid companies, without any credit problem, the balance sheets are in order and they produce products with greater demand than supply." (JX 4.)  Ms. Ferreira's e-mail did not state the high risk nature of the purchased Notes, did not acknowledge that the instruments were appropriate for sophisticated investors and did not acknowledge that she had not procured Plaintiff Delio's authorization for the purchases.  (Geelan Testimony.)

**D.      Plaintiff Delio Receipt of Stock.**

The February 2009 statement for Plaintiff Delio's account in JX 3, Bates stamp SNB-SF 00271 to SNB-SF 00276, shows Plaintiff Delio receiving credits for $1,885.20 and $21  (SNB-SF 00298) and Plaintiff  Delio receiving physical delivery of 420 shares of Mosaic  (SNB-SF 00293). Plaintiff Delio, however, did not intend to own any common stocks in his account.  (JX 3; Delio Testimony.)

The July 2009 statement for Plaintiff Delio's account in JX 3, Bates stamp SNB-SF 00322 to SNB-SF 00326, shows a transaction on July 29, 2009 for a credit of $840.07 for cash in lieu of "fraction SHS AGU"  (SNB-SF 00323) shows Plaintiff Delio owning 600 shares of Agrium and shows the value of the investments shown was $76,252.50 (SNB-SF 00324).  But again, Plaintiff Delio did not intend to own any common stocks in his account and did not go to Defendant Bank in order to have investments and shares of stock.  (JX 3; Delio Testimony.)

**VI.     The Account Under Defendant Bank Officer Amorim.**

In late July 2009, Plaintiff Delio called Defendant Bank because he wanted to use the funds in the account for purchasing real estate in Brazil.  Plaintiff Delio was told that Ferreira no longer

worked at the Bank and that the person who would be dealing with Plaintiff Delio was Mr. Marco Amorim ("Amorim").  Amorim informed Plaintiff Delio of his account balance, which at the time was half its original value.  Plaintiff Delio has testified that this development greatly surprised him because he thought that Ferreira for Defendant Bank had guaranteed the principal on his investments. (Delio Testimony.)

Following the phone call, on August 14, 2009, Amorim sent an e-mail to Plaintiff Delio.  The e-mail is contained in JX 4; the Portugese appears on Bates stamp SNB-SF 00604 to SNB-SF 00605 and the English appears on Bates stamp SNB-SF 00612 to SNB-SF 00613.   Amorim denied error on the Defendant Bank's part and stated he had not identified any messages from Ferreira that guaranteed the principal.  Amorim further stated that as a good faith business venture, Defendant Bank would like to propose to Plaintiff Delio favorable conditions for financing. Plaintiff Delio, however, did not accept Amorim's statements, did not see Amorim's gesture as a way to keep Plaintiff Delio's business and did not respond to Amorim's e-mail.  (JX 4; Delio Testimony.)

In late 2009, Plaintiff Delio requested the documents that had accumulated in "Hold Mail" at Defendant Bank, and Defendant Bank complied with the request.  Among the documents received by Plaintiff Delio in December 2009 were: account term pages, the International Banking Terms & Conditions, account statements, trade confirmations, and other notices.  (Delio Testimony.)

In an email dated May 26, 2010, Plaintiff Delio gave written authorization to Defendant Bank to sell the three equities, Agrium, Mosaic, and Vale.   This email in the original Portuguese is contained in JX 5 at Bates stamp 00065P and in the English translation at Bates stamp 00098P. Plaintiff Delio needed to make a cash deposit for the real estate he had wanted to buy in Brazil and had told Naslausky about in July 2002 when opening the account. The three equities were sold on

-14-

June 1, 2010, June 2010 and June 3, 2010 at a loss: a net amount of $31,807.46 was received for

Agrium; a net amount of $18,774.68 was received for Mosaic; and $34,181,42 for Vale.  In total, the

three stocks -- Agrium, Mosaic and Valle -- were sold with credits given in the total amount of

$84,763.56.   (Stip. Fact 15; JX 5; JX 3, SNB-SF 00387.)

The June 2010 statement for Plaintiff Delio's account in JX 3, Bates stamp SNB-SF 00386

to SNB-SF 00390, shows three outgoing wire transfers that Delio initiated.  The total of the three

transfers were $18,093.  Three stocks -- Agrium, Mosaic and Valle – were sold with credits given

in the total amount of $84,763.56.  Plaintiff Delio authorized the sale of those three stocks.  Plaintiff

Delio had to do so on an urgent basis because Delio needed to make a cash deposit for the real estate

he wanted to buy in Brazil.  (JX 3; Delio Testimony.)

## VII.   **Damages.**

A summary chart of "cash in" and "cash out" in Plaintiff Delio's account at Defendant Bank

was marked at the deposition of Plaintiff Delio as D-5, Bates stamp SNB-SF 000615, and is marked

for trial and receipt in evidence as JX 6.  The "cash in" is shown to be a deposit in 2002 of 160,000

Euros converted to $160,000, and the "cash out" is shown to total $104,438 resulting from: a

withdrawal of $3,000 on October 23, 2003; a withdrawal of $4,000 on March 12, 2004; a withdrawal

of $2,500 on January 5, 2005; a withdrawal of $18,093 on June 1, 2010; a withdrawal of $43,000

on June 2, 2010; and a withdrawal of 33,846 on June 3, 2010.  The arithmetic difference, without

considering the time value of money, is shown to be $55,561.  Plaintiff Delio has testified that

$55,561 might be equivalent to a loss but it does not represent what Plaintiff Delio lost in interest

and profit.  (JX 6; Stip. Fact 16; Delio Testimony.)  A calculation of expectation damages for breach

of contract would show the amount to be $90,722.  (PX 2.)

-15-

## ARGUMENT

### I.

### THE COURT SHOULD ENTER JUDGMENT IN FAVOR OF PLAINTIFF DELIO ON HIS CLAIM FOR BREACH OF CONTRACT

Based on the trial record and the applicable law, the Court should enter judgment for Plaintiff Delio on his claim for breach of contract. The elements of breach of contract will be satisfied by more than the preponderance of the evidence in the trial record, and Defendant Bank's attempt to invoke fine print contractual language to absolve itself of liability is unavailing.

**A.      The Elements Of Breach Of Contract Are Satisfied.**

The elements of a breach of contract claim in New York are: (1) the existence of a contract, (2) performance by the party seeking recovery, (3) non-performance by the other party, and (4) damages attributable to the breach. *Beautiful Jewellers Private Ltd. v. Tiffany & Co.*, 438 F. App'x 20, 21-22 (2d Cir. 2011), *citing First Invs. Corp. v. Liberty Mut. Ins. Co.,* 152 F.3d 162, 168 (2d Cir.1998); *RCN Telecom Servs., Inc. v. 202 Ctr. St. Realty LLC.*, 156 F. App'x 349, 350-51 (2d Cir. 2005), *citing Marks v. New York University,* 61 F.Supp.2d 81, 88 (S.D.N.Y.1999).  Each of these elements of breach of contract will be satisfied by more than the preponderance of the evidence in the trial record.

#### 1.      Existence Of A Contract.

The trial record will show the existence of an agreement between Defendant Bank and its customer Plaintiff Delio, subject to the contract law governing contracts of adhesion, in the bank account opening terms pages, the "International Banking Terms and Conditions" and an "Investment

Agreement."  The account opening term pages contain necessary signatures and identification of terms and limitations.  (JX 1.)

    2.    **Performance By The Party Seeking Recovery.**

The trial record will show that Plaintiff Delio, as the bank customer, performed by putting the 160,000 Euros into the bank account opened after meeting with Naslausky.  (JX 2; Delio Testimony.)

    3.    **Non-Performance By The Other Party.**

Defendant Bank, while Ferriera was the account officer, did not abide by the contract.

As noted above, Plaintiff Delio was and is of modest means and was, to say the least, unsophisticated and inexperienced with respect to securities.  In the years 1989 to 2002, Delio had no experience in common stock, preferred stock, corporate bonds, municipal bonds, options or derivatives.  In the years 1999 to 2009, Plaintiff Delio received only professional fees; he had no rental income; he had no annual income exceeding $100,000; he did not have assets exceeding $100,000.  Further, Plaintiff Delio made clear to Defendant Bank that he was conservative with money.  (Delio Testimony.)

As also noted above, the Structured Note transactions effected by Defendant Bank officer Ferreira were: not specifically authorized by Plaintff Delio in writing; originated in fact by Defendant Bank Ferreira without a disclosure of risks and not as an accommodation for Plaintiff Delio; not accompanied with the provision of a written prospectus; and wholly unsuitable for Plaintiff Delio, who was not an accredited investor under S.E.C. Rules.  (Delio Testimony; Geelan Testimony.)

As also noted above, the "Investment Profile" authorized investment in general accounts, mutual funds, money market, U.S. equities and time deposits -- emerging market debt and derivative

instruments were not authorized (JX 1); and the Defendant Bank's "International Banking Terms and Conditions" provided, among other things, that "all financial instruments and securities purchased by the Bank for your Investment Account will be selected by you, without recommendation or advice by the Bank" (JX 1).

### 4.    Damages Attributable To The Breach Of Contract.

As noted above, the Structured Note transactions resulted in losses to Plaintiff Delio's bank account.  (Stipulated Fact and Chart of Structured Note Transactions.)  Plaintiff Delio was damaged by Defendant Bank's breach of contract.

Damages for breach of contract ordinarily involves the court protecting the expectation of the injured party (here, Plaintiff Delio) by giving the injured party the "benefit of the bargain."  E.A. Farnsworth, _Contracts_, § 12.1, p. 730 (4th ed. 2004).  The "benefit of the bargain" is the value of the contract that the contract would have had, had it been performed. E.A. Farnsworth, _Contracts_, § 12.1, p. 730 (4th ed. 2004).  _Accord_, Second Restatement of Contracts § 344.

What that means in this case is that with the "cash in" and "cash out" chart in mind, a calculation can be made that gives a benefit of the bargain calculation, which is shown in PX 2 as $90,722.  From the original deposit amount (in 2002 dollars), the $9,500 in withdrawals from October 2003 to January 2005 are deducted and then the remainder is adjusted using Federal Reserve interest rates.  From the adjusted net deposit money in July 2010 of $185,661, the withdrawal then of $94,939 (what remained after the wrongful investments in Structured Notes in 2010 dollars), the number calculated is $90,722, which is the amount that would put Plaintiff Delio in the same position he would have been in but for Defendant Bank's breach.

-18-

An alternative approach to contract damages is the protection of the injured party's reliance interest."  E.A. Farnsworth, _Contracts_, § 12.1, p. 732 (4th ed. 2004).  The "reliance" interest is protected by putting the injured party back in the position that the injured party would have been in had the contract not been made.  E.A. Farnsworth, _Contracts_, § 12.1, p. 732 (4th ed. 2004).  The reliance approach is more typically applied where the injured party has incurred costs and expenses in anticipation of the contract benefits; here, to the extent that reliance is considered, it was Plaintiff Delio's reliance on Plaintiff Bank maintaining the account monies, which Plaintiff Bank did not do.

**B.     Defendant Bank's Attempt To Invoke Fine Print Contractual
        Language To Absolve Itself Of Liability Is Unavailing.**

Defendant Bank in this case has been relying on fine print in the Defendant Bank's International Banking Terms and Conditions document, which has 31 numbered sections on 11 pages, to absolve itself of liability from basic contract liability.  It is a quite mistaken notion legally.

The International Banking Terms and Conditions document is unquestionably a standardized contract form, often times called a contract of adhesion, because a customer essentially takes it or leaves it without a realistic opportunity to bargain.  _Sears Roebuck and Co. v. Avery_, 593 S.E.2d 424, 430 (N.C. Ct. App. 2004); _Broemmer v. Abortion Servs. of Phoenix, Ltd._, 173 Ariz. 148, 150, 840 P.2d 1013, 1015 (Ariz. S.Ct. 1992); _Godfrey v. Eastman Kodak Co._, 1991 WL 64463 *3-4 (S.D.N.Y. 1991); _Wheeler v. St. Joseph Hosp._, 63 Cal.App.3d 345, 356, 133 Cal. Rptr. 775, 783 (1976); E.A. Farnsworth, _Contracts_, § 4.26, 285-294 (4th ed. 2004).

The record in this case clearly corresponds to that description of a contract of adhesion: when the account was opened, Defendant Bank officer Naslausky had Plaintiff Delio sign an "Acknowledgment" that has Plaintiff Filho agreeing to the International Banking Terms and

-19-

Conditions document that he was in fact not shown and not given at the time.  (Delio Testimony.)

Aptly, comment b to § 211 of the Second Restatement of Contracts states: "Customers do not in fact

ordinarily understand or even read the standard terms.  They trust to the god faith of the party using

the form and to the tacit representation that like terms are being accepted regularly by others similarly

situated."

It is recognized in the Second Restatement of Contracts and by the courts that the

enforceability of a contract of adhesion is especially affected by three legal doctrines: (i) the

reasonable expectation of the adhering party; (ii) the overriding obligation of good faith and fair

dealing; and (iii) the unconscionability doctrine.  Second Restatement of Contracts, § 211 and

comments; _Sears Roebuck and Co. v. Avery_, 593 S.E.2d 424, 430-431 (N.C. Ct. App. 2004); _Darner_

_Motor Sales, Inc. v. Universal Underwriters Ins. Co._, 140 Ariz. 383, 392, 682 P.2d 388, 397 (Ariz.

S.Ct. 1984); _Broemmer v. Abortion Servs. of Phoenix, Ltd._, 173 Ariz. 148, 151-152, 840 P.2d 1013,

1016-1017 (Ariz. S.Ct.  1992); _Graham v. Scissor-Tail, Inc._, 28 Cal.3d 807, 820, 171 Cal. Rptr. 604,

612, 623 P.2d 165, 172-173 (1981).

It follows that these legal doctrines do not permit for the kind of literal reading of the

International Banking Terms and Conditions and Investment Agreement documents in this case as

done in this case by Defendant Bank as the basis for interpretation.  _See_, _e.g._, _Follman v. World_

_Financial Network National Bank_, 721 F.Supp.2d 158 (E.D.N.Y. 2010).  Also, it follows that any

attempt to limit liability based on fine print in the International Banking Terms and Conditions and

Investment Agreement documents would be unconscionable in the law of contracts of adhesion: "A

contract or clause is unconscionable where there is an 'absence of meaningful choice on the part of

one of the parties together with contract terms which are unreasonably favorable to the other party'."

**-20-**

_Desiderio v. National Ass'n of Sec. Dealers_, 191 F.3d 19, 207 (2d Cir. 1999), _cert. denied_, 531 U.S.

1069 (2001), _quoting_ 8 Samuel Williston, _A Treatise on the Law of Contracts_ § 18.9, at 54 (4ᵗʰ ed.

1998); _Brennan v. Bally Total Fitness_, 153 F.Supp.2d 408, 416 (S.D.N.Y. 2001); _Rush v._

_Oppenheimer & Co._, 638 F.Supp. 872, 875 (S.D.N.Y. 1996).

Defendant Bank's argument has essentially ignored, as it cannot, the law of contracts

governing contracts of adhesion.

## II.

## THE COURT SHOULD ENTER JUDGMENT IN FAVOR OF PLAINTIFF DELIO ON HIS CLAIM FOR BREACH OF FIDUCIARY DUTY

Based on the trial record, the Court should enter judgment for Plaintiff Delio on his claim

for breach by Defendant Bank of fiduciary duty. Under the circumstances of this case, the law that

recognizes that a fiduciary duty may arise between a bank and its customer is amply satisfied, and

Defendant Bank's sale of high risk securities to an unsophisticated investor without disclosure of the

risks breached its fiduciary duty owed to Plaintiff Delio.

**A.     Under The Law and Given The Facts of This Case, The Defendant Bank Owed A Fiduciary Duty To Plaintiff Delio.**

The law recognizes that notwithstanding any general rule otherwise, circumstances may give

rise to a Bank having a fiduciary duty to a Bank customer. In _ADT Operations, Inc. v. Chase_

_Manhattan Bank, N.A._, 173 Misc.2d 959, 963, 662 N.Y.S.2d 190 (Sup.Ct. N.Y. Co. 1997), the Court

noted that while "the New York courts have generally held that the legal relationship between a

customer and a bank is an arm's length, debtor/creditor relationship which does not, without more,

create a fiduciary relationship," "[a] fiduciary relationship may arise between a bank and its customer

where the bank assumes control and responsibility over the customer's assets and operations, or

where the customer places special trust and confidence in the bank and thereby becomes dependent upon it," *citing Manufacturers Hanover Trust Co. v. Yanakas*, 7 F.3d 310, 318 (2d Cir. 1993), *P. Chimento, Inc. v. Banco Popular de Puerto Rico*, 208 A.D.2d 385, 386, 617 N.Y.S.2d 1757 (1st Dep't 1994) and *Scott v. Dime Savings Bank of New York*, 886 F.Supp. 1073 (S.D.N.Y. 1995). Also, in *Frydman & Company, et al. v. Credit Suisse First Boston Corp.*, 272 A.D.2d 236, 237, 708 N.Y.S.2d 77 (1st Dep't 2000), and *Weiner v. Lazard Freres & Co.*, 241 A.D.2d 114, 122, 672 N.Y.S.2d 8 (1st Dep't 1998), it was stated that a court will look to "the ongoing conduct between the parties" to determine whether a fiduciary relationships exists.

The facts of this case fit exactly the situation that these cases recognize when a bank assumes control and responsibility over the customer's assets and operations and where a customer places special trust and confidence in the bank and becomes dependent upon it. The circumstances included, but were not limited to, the filling out of forms in English for Plaintiff Delio given Plaintiff Delio's limited knowledge of English, the assurances given by Defendant Bank officers Naslausky and Ferreira about taking care of Plaintiff Delio, the oral guarante given by Defendant Bank office Fereira to Plaintiff Delio that the principal was protected, the trust imposed by Plaintiff Delio in Defendant Bank, Plaintiff Delio's lack of sophistication and experience in securities and corresponding inability to evaluate the Structured Notes presented by Defendant Bank officer Ferreira, the sending of statements and other documents to "hold" instead of Plaintiff Delio, Plaintiff Delio's need expressed to Defendant Bank officers Naslausky and Ferreira to protect the monies being placed in account with Defendant Bank and the conservative investment restrictions placed on the account.

**B.**    **The Defendant Bank Breached Its Fiduciary Duty To Plaintiff Delio.**

Defendant Bank breached its fiduciary duties of care and loyalty by, among other things: (i) disregarding Plaintiff Delio's conservative profile; (ii) putting Plaintiff Delio's funds into high risk Structured Notes without Plaintiff Delio's specific written authorization and without a without a disclosure of risks; (iii) putting Plaintiff Delio's funds into high risk Structured Notes that were wholly unsuitable for Plaintiff Delio, who was not an accredited investor under S.E.C. Rules; (iv) originating the Secured Note transactions and effecting them without the provision of a written prospectus to Plaintiff Delio; and (v) failing to supervise Defendant Bank officer Ferreira to avoid the violations of regulations.

Defendant Bank may cite to what it will in terms of what Banks are permitted to do with respect to the handling of securities transactions for customers, but in that connection, the point remains that Defendant Bank was not in compliance with numerous federal regulations. Defendant Bank did not fit the exemption in the regulations promulgated by the S.E.C. for the definition of broker accepting orders to effect securities transactions. The Defendant Bank's purchase for Plaintiff Delio's account of the Structured Notes was in violation of Regulation D of the Securities Act of 1933 and failed the suitability rule given the Plaintiff Delio's lack of knowledge, much less sophistication, concerning securities. Defendant Bank's actions simply cannot be squared with its fiduciary duties to Plaintiff Delio.

**C.**    **Damages Attributable To The Breach Of Fiduciary Duty.**

As noted above, the Structured Note transactions resulted in losses to Plaintiff Delio's bank account. (Stip. Fact 14 and Chart of Structured Note Transactions.) Unquestionably, Plaintiff Delio was damaged by Defendant Bank's breach of fiduciary duty. The out-of-pocket loss flowing from

the breach of fiduciary duty may be considered the losses shown in the chart contained in Stipulation of Fact No. 14 at $45,718, before the addition of pre-judgment interest.

### III.

### THE COURT SHOULD ENTER JUDGMENT IN FAVOR OF PLAINTIFF DELIO ON HIS CLAIM FOR VIOLATION OF SECTION 10(b) OF THE SECURITIES EXCHANGE ACT OF 1934 AND RULE 10b-5 PROMULGATED THEREUNDER

Based on the trial record, the Court should enter judgment for Plaintiff Delio on his private right of action for violation of S.E.C. Rule 10b-5 promulgated under § 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b).  The preponderance of the evidence will establish that the elements of the 10b-5 action have been satisfied, particularly the element of scienter.  _Herman & MacLean v. Huddleston_,, 459 U.S. 375 (1983) (preponderance the burden of proof for 10b-5).

**A.     The Preponderance Of The Evidence Will
         Establish The Elements Of The 10b-5 Action.**

Section 10(b) of the Securities Exchange Act of 1934 states that it is unlawful for any person "[t]o use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, or any securities-based swap agreement[,] any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors. use or employment of any deceptive device."  S.E.C. Rule 10b-5 forbids, in connection with the purchase or sale of any security, (a) the employment of any scheme, device or artifice to defraud, (b) the making of any "untrue statement of a material fact" or the omission of any material fact "necessary in order to make the statement made . . .  not misleading," and (c) the engaging in any act, practice or course operating as a fraud or deceit upon any person.

The U.S. Supreme Court has recognized that courts have implied from § 10(b) of the

Securities Exchange Act and Rule 10b-5 a private damages action resembling but not identical to a common law tort action for fraud. *Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S.336, 341 (2005); *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 730 (1975).

The elements of a private cause of action under § 10(b) of the Securities Exchange Act of 1934  and S.E.C. Rule 10b-5 are: (i) material misrepresentation or omission; (ii) scienter; (iii) in connection with the purchase or sale of a security; (iv) reliance (or transaction causation); (v) economic loss; and (vi) loss causation. *Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336, 341-342 (2005); *Stoneridge Investment Partners, LLC v. Scientific-Atlanta, Inc.*, 552 U.S. 148, 157 (2008); *Matrixx Initiatives Inc. v. Siracusano*, __ U.S. __, 131 S.Ct. 1309, 1317 (2011); *In re Flag Telecomn Holdings, Ltd. Securities Litigation*, 574 F.3d 29, 35-36 (2d Cir. 2009)(cites *Stoneridge Investment Partners, LLC v. Scientific-Atlanta, Inc.* for six elements). *See Delshah Group LLC v. Atit Javeri, et al.*, 2013 WL 2322488 (S.D.N.Y. May 28, 2013) (Forrest, J.) discussion in trial decision.

These elements are amply satisfied in this case.  The Structured Notes were "securities" within the meaning of the federal securities law and were purchased for Plaintiff Delio's account in a course of conduct by the Defendant Bank that among other things: (i) put Plaintiff Delio's funds into high risk Structured Notes without Plaintiff Delio's specific written authorization and without a without a disclosure of the risks; (ii) put  Plaintiff Delio's funds into high risk Structured Notes that were wholly unsuitable for Plaintiff Delio, who was not an accredited investor under S.E.C. Rules and lacked knowledge, much less sophistication, concerning securities; (iii) had the Defendant Bank originating the Secured Note transactions and effected them without the provision of a written prospectus to Plaintiff Delio; (iv) involved the Defendant Bank in the sale of securities when it did

-25-

not fit the exemption in the regulations promulgated by the S.E.C. for the definition of broker

accepting orders to effect securities transaction; and (v) involved the Defendant Bank in the sale of

securities in violation of Regulation D of the Securities Act of 1933.  The Secured Note transactions

occurred due to Plaintiff Delio's reliance on Defendant Bank, and the losses occurred directly from

these transactions to the damage of Plaintiff Delio.

**B.    The Preponderance Of The Evidence Will
Establish The Scienter Element Of The 10b-5 Action.**

According to the U.S. Supreme Court, [t]o establish liability under § 10(b) and Rule 10-5,

a private plaintiff must prove that the defendant acted with scienter, 'a mental state embracing intent

to deceive, manipulate, or defraud'" and presumably including 'deliberate recklessness.'" *Matrixx*

*Initiatives, Inc. v.Siracusano*, __ U.S. __, 131 S.Ct. at 1323, *quoting Tellabs, Inc. v. Makor Issues*

*& Rights, Ltd.*, 551 U.S. 308, 319 (2007), *quoting Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 193-

194 (1976).  Technically, in *Matrixx Initiatives, Inc. v.Siracusano*, __ U.S. __, 131 S.Ct. at 1323, the

question of whether reckless behavior is sufficient to establish liability under § 10(b) and Rule 10b-5

was not decided, as it has not been since *Ernst & Ernst v. Hochfelder*, 425 U.S. at 193-194.  But the

Second Circuit, like other Circuits, has ruled that scienter may be established by recklessness "in

appropriate circumstances."  *Rolf v. Blyth, Eastman Dillon & Co.*, 570 F.2d 38, 46 (2d Cir. 1978);

*Ottmann v. Hanger Orthopedic Group*, 353 F.3d 338, 343 (4th Cir. 2003)(lists cases of the Circuits).

Further, to quote the Second Circuit, "A plaintiff can establish a strong inference of fraudulent intent

in two ways: 'either (a) by alleging facts to show that defendants had both motive and opportunity

to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious

misbehavior or recklessness.'" *Chill v. General Electric Company*, 101 F.3d 263, 267 (2d Cir. 1996),

citing San Leandro Emergency Med. Group Profit Sharing Plan v. Philip Morris Cos., 75 F.3d 801,

813 (2d Cir. 1996), Acito v. IMCERA Group, Inc., 47 F.3d 47, 52 (2d Cir. 1995), and Shields v.

Citytrust Bancorp, Inc., 25 F.3d 1124, 1128 (2d Cir. 1994).

Plaintiff Delio clearly can prove scienter in this case.  The record in this case establishes that:

(a) Defendant Bank had both motive and opportunity to commit fraud (the status of Plaintiff Delio's

account in late 2006 was considered deficient); and (b) there were circumstances that constitute

strong circumstantial evidence of conscious misbehavior or recklessness.  Indeed, given the course

of conduct described above (pp. 25-26), the conclusion of "conscious recklessness" jumps out at the

reader.  Certainly, Defendant Bank had an opportunity to commit fraud with the way that the account

was set up, South Cherry St., LLC v. Hennessee Group LLC, 573 F.3d 98, 108-109 (2d Cir. 2009);

and certainly, that what was done by Ferreira as a bank officer in engaging in the high risk Note

transactions with Plaintiff Filho's account monies without Plaintiff Filho's knowledge and

authorization carried the risk of fraudulent omission so obvious that Ms. Ferreira and thus the

Defendant Bank must have been aware of it, ECA & Local 134 IBEW Joint Pension Trust of Chicago

v. JP Morgan Chase Co., 553 F.3d 187,198 (2d Cir. 2009).  Defendant Bank's argument against

scienter is simply a matter of the Defendant Bank kidding itself about its conduct.  Ferreira is not

being produced by Defendant Bank as a witness, and thus missing witness law effectively precludes

Defendant Bank from arguing scienter.

## C.    Damages Attributable To The 10b-5 Violation.

As noted above, the Structured Note transactions resulted in losses to Plaintiff Delio's bank

account.  (Stip. Fact 14 and Chart of Structured Note Transactions.)  Unquestionably, Plaintiff Delio

was damaged by Defendant Bank's violation of § 10(b) of the Securities Exchange Act of 1934 and

Rule 110b-5 promulgated thereunder.  In 10b-5 actions, a plaintiff receives "actual damages," § 28(a) of the Securities Exchange Act, 15 U.S.C. § 78bb(a), which means out-of-pocket losses." _Zeller v. Bogue Elec. Mfg. Corp._, 476 F.2d 795, 801-802 (2d Cir.), _cert. denied_, 414 U.S. 908 (1973); _Levine v. Seilon_, 439 F.2d 328, 334 (2d Cir. 1971).  The out-of-pocket loss flowing from the breach of fiduciary duty may be considered the losses shown in the chart contained in Stipulation of Fact No. 14 at $45,718, before the addition of pre-judgment interest.

## IV.

### THE COURT SHOULD ENTER JUDGMENT IN FAVOR OF
### PLAINTIFF DELIO ON HIS CLAIM FOR COMMON LAW FRAUD

Based on the trial record, the Court should enter judgment for Plaintiff Delio on his claim for common law fraud.  The clear and convincing evidence will establish that the elements of common law fraud will be satisfied.    _Gaidon v. Guardian Life Insurance_, 94 N.Y.2d 330, 725 N.E.2d 598, 704 N.Y.S.2d 177 (1999) (burden of proof).

Similar to Rule 10b-5 cases, common law fraud involves elements of material misrepresentation or omission, scienter,  causation and damages.  _Banque Arabe Et Internationale D'Investissement v. Maryland National_, 57 F.3d 146, 153 (2d Cir. 1995).  As discussed above (p. 21), Defendant Bank owed a fiduciary duty to Plaintiff Delio, and thus, there was a duty to speak and material omissions are actionable as fraud under state law.  As also discussed above (pp. 25-27), Defendant Bank engaged in a fraudulent course of conduct involving those material omissions that was done with scienter and caused damage to Plaintiff Delio.  The damages amount is effectively shown by the amount in Stipulation of Fact 14.

## CONCLUSION

For the reasons stated above, the Court should based on the trial record enter Judgment for Plaintiff Delio for breach of contract and award damages in the amount of $90,722 before pre-Judgment interest, breach of fiduciary duty and award damages in the amount of $45,718 before pre-Judgment interest, violation of § 10(b) of the Securities Exchange Act of 1934 and S.E.C. Rule 10b-5 and promulgated thereunder and award damages in the amount of $45,718 before pre-Judgment interest and common law fraud and award damages in the amount of $45,718 before pre-Judgment interest and further should grant such other and further relief as the Court deems just and proper, including the award of punitive damages in an amount of the Court's discretion for wilful, wanton behavior that was in breach of fiduciary duty, violation of § 10(b) of the Securities Exchange Act of 1934 and S.E.C. Rule 10b-5 and promulgated thereunder and common law fraud.

Dated:  New York, New York
         July 15, 2013                    **NESENOFF & MILTENBERG, LLP**

                                          By: _____*Philip A. Byler, Esq.*_____
                                               **Philip A. Byler, Esq.**
                                               **Andrew T. Miltenberg, Esq.**
                                               **Marco Santori, Esq.**

                                          **Attorneys for Plaintiff Delio Alosisio**
                                               **Mattos Santos Filho**
                                          **363 Seventh Avenue - 5th Floor**
                                          **New York, New York 10001**
                                          **212.736.4500**